IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 115-030 |
| | ) | |
| ERNESTO JUAN MARTINEZ | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

On March 25, 2015, the Court, upon oral motion by defense counsel, ordered that Defendant undergo a psychiatric examination to determine competence under 18 U.S.C. § 4241. (Doc. no. 10.) Dr. Christine Scronce evaluated Defendant and issued a report that the Court received on August 13, 2015. (Doc. no. 17). At the evidentiary hearing on August 25, 2015, conducted pursuant to 18 U.S.C. §§ 2241(c), 2247(d), the parties stipulated to the admissibility of the psychiatric report and Defendant testified. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendant (1) be determined currently incompetent to stand trial and (2) be committed to the custody of the Attorney General via the Bureau of Prisons ("BOP") for treatment in a suitable facility for a reasonable period of time, not to exceed four months, as necessary to determine if Defendant can attain the capacity to permit proceedings to go forward.

**I. BACKGROUND**

The indictment charges Defendant with felon in possession of a firearm. (Doc. no. 1.) At the initial appearance on March 25, 2015, the Court granted the oral motion by defense counsel and ordered Defendant to undergo a psychiatric examination due to his non-responsive

behavior.  Defendant was transferred to the Metropolitan Correctional Center ("MCC") in Chicago, Illinois on May 4, 2015 for the purpose of evaluating his competency to stand trial, as well as his responsibility at the time of the acts alleged in the indictment.

Defendant underwent nearly two months of observation and evaluation at MCC, and the staff evaluating Defendant submitted a Forensic Evaluation Report ("FER") dated August 4, 2015. (Doc. no. 17, under seal). In addition to clinical observations and interviews, Dr. Scronce considered Defendant's criminal history, recordings of phone calls made at the Richmond County Jail, records from Georgia Diagnostic and Classification Prison, and the BOP's electronic medical and mental health records.

### III. DISCUSSION

18 U.S.C. § 4241 provides the standard for determining competency and the consequences for a finding of competency. In pertinent part, the Code section provides:

> **(d) Determination and disposition.**--If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General.

18 U.S.C. § 4241(d). The Court must determine "whether the defendant ha[s] 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and whether he ha[s] 'a rational as well as factual understanding of the proceedings against him.'" United States v. Nickels, 324 F.3d 1250, 1252 (11th Cir. 2003) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960)).

The Court finds that Defendant has a mental defect rendering him incapable of understanding the proceedings and effectively consulting with his lawyer. In reaching this

conclusion, the Court relies on Dr. Scronce's report, which both parties stipulated as being admissible, as well as Defendant's testimony and demeanor at the hearing. Dr. Scronce diagnosed Defendant with Antisocial Personality Disorder and Schizophreniform disorder, with catatonia, due to his symptoms not lasting the requisite six month period for a Schizophrenia diagnosis. (Doc. no. 17, p. 7.)

Upon arriving at MCC, Defendant would not cooperate with the intake procedures and was offended by the use of pronouns. (Id. at 4-5.) In his clinical contacts with Dr. Scronce, Defendant had great difficulty responding relevantly to questions, and he would ramble at length about the Bible, the Constitution, and other unrelated topics. (Id. at 5.) Much of Defendant's speech was incoherent, and he referred to the belief that other inmates at MCC were "programmed." (Id.) Dr. Scronce had difficulty assessing Defendant's symptoms due to his refusal to take a personality test and psychiatric consultation, as well as his inability to respond relevantly to questions. (Id. at 5-6.) Dr. Scronce's description is consistent with Defendant's non-responsive behavior at the initial appearance and his testimony on August 25, 2015. (See doc. no. 10.)

Although Dr. Scronce considered that Defendant could be feigning mental illness, she found this unlikely as he persistently demonstrated symptoms of disorganized thinking as well as disorganized speech. (Doc. no. 17, p. 6.) Further, Defendant did not claim any symptoms of auditory or visual hallucinations, common symptoms feigned by malingerers. (Id. at 6.) As a result of her observations, Dr. Scronce concluded that Defendant currently "suffers from a mental disease or defect which renders him unable to understand the nature and consequences of the proceedings against him, or to assist properly in his defense." (Id. at 7.)

3

Defendant's testimony at the hearing confirmed Dr. Scronce's observations and opinion. Indeed, Defendant's testimony was largely incoherent with citations to the Bible and the Constitution along with an insistent use of inapplicable pronouns and a lengthy dissertation concerning his thoughts about the true meaning and sociological effects of pronouns. At one point, Defendant informed the Court that "we and they, or I and you, they're all quantities of us, just like, divided into fractions." (*For the Record* 2:12:42 – 2:12:56). Given the evidence in Dr. Scronce's report and the bizarre nature of Defendant's testimony, the Court **FINDS** by a preponderance of the evidence that Defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to understand the nature and consequences of the proceedings against him and to assist properly in his defense.

### IV.  CONCLUSION

For the foregoing reasons, the Court **REPORTS** and **RECOMMENDS** that Defendant (1) be determined currently incompetent to stand trial and (2) be committed to the custody of the Attorney General via the Bureau of Prisons ("BOP") for treatment in a suitable facility for a reasonable period of time, not to exceed four months, as necessary to determine if Defendant can attain the capacity to permit proceedings to go forward.

SO REPORTED and RECOMMENDED this 28th day of August, 2015, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA